Regina E. Bockenhauer, Myra Chanin, Ben W. Joseph and Judith G. Joseph, his wife, Appellants v. Zoning Board of Adjustment and The Franklin Institute, Appellees.

Argued September 29, 1978, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Ben W. Joseph,* with him *Joseph & Mass,* for appellants.

*Denis V. Brenan,* with him *Thomas P. Witt,* and, of counsel, *Morgan, Lewis & Bockius,* for appellees.

OPINION BY JUDGE ROGERS, October 31, 1978:

Neighbors of the Franklin Institute have appealed an order of the Court of Common Pleas of Philadelphia County affirming a grant by the Philadelphia Zoning Board of Adjustment of variances for the construction by the Institute of three small buildings on its grounds in center city Philadelphia.

The Institute occupies under lease from the city the block bounded by Race, Winter, Twentieth and Twenty-first Streets, an area in excess of five acres. Its large exhibit and teaching halls occupy all of the frontage on Winter and Twentieth Streets and a portion of the frontages on Race and Twenty-first Streets. There remains in the rear of the exhibit and teaching halls an extensive open area, about 320 feet square and containing about two acres. This portion of the Institute's property is known as Science Park and various outdoor exhibits have been placed there from time to time.

In January 1976, the Institute applied to the city's Department of License and Inspections (L&I) for permission to construct three buildings in Science Park: an exhibit consisting of replicas of two adjoining row houses, one dilapidated and the other rehabilitated; a toilet facility; and a snack bar. L&I refused the applications by a writing reading, pertinently, as follows:

## REASONS FOR REFUSAL

ZONING & USE: The application is for the erection of three structures on the same lot as an existing structure—Structure #1 an existing museum and Structures #2, 3, 4 to be used for an exhibit building, snack bar and toilet building creating a condition whereby no structures will have their own individual lot lines, rear yard, side yards, open area, etc. and whereas this condition is not permitted in the R-14 Res. Dist. and the proposed snack bar is not permitted in the R-14 Res. Dist.

REMARKS: 3 Zoning Refusals
2 Use Refusals

The Institute appealed L&I's action of refusal of the permits to the Zoning Board of Adjustment, which, after hearing, granted all of the variances necessary to overcome L&I's order of refusal. The Board of Adjustment in general terms found that the Institute labored under unnecessary hardship; it referred to no specific conditions which assertedly created this hardship, except that the Institute's principal buildings had existed at the location since the 1920's. On the neighbors' appeal, the Court of Common Pleas upheld the Zoning Board of Adjustment action granting variances and this appeal followed.

The neighbors complain that there was no showing at the hearing before the Zoning Board of Adjustment of any unnecessary hardship imposed on the Institute by its being denied the right to construct the three facilities in question. We agree. The Institute's case consisted of a witness's description of what the Institute intended to construct, with emphasis on the amenities, and evidence that a neighborhood civic association did not oppose its application for variances.

We have reviewed the record and the Philadelphia Zoning Code and have concluded that L&I's refusal of permits based on the asserted nonconformity of the three structures with yard and open space requirements of the Zoning Code was erroneous and that as a consequence no variances were required for these alleged deficiencies in the application. We believe further that L&I was wrong also in refusing use permits for the proposed exhibit and for the toilet facility. We also believe that the snack bar is not a permitted use but one for which a variance was required and that the Zoning Board of Adjustment improvidently granted the variance in this instance.

L&I's so-called "zoning refusals," as distinguished from its so-called "use refusals," were based on its conclusion that each of the three proposed structures was required by the zoning ordinance to have its own lot lines, its own rear yard, side yard and open space.

The Institute's property is located in the R-14 Residential District established under Section 14-215 of the city's Zoning Code. The area regulations concerning rear yard, side yard and open area to which L&I must have had reference were as follows:

§14-215

(2) Area Regulations.

(a) *Lot* Width and Area. The minimum *lot* width shall be 50 feet, and the minimum *lot* area shall be 10,000 square feet.

(b) Occupied Area. Not more than 50% of the *lot* area shall be occupied by buildings.

(c) Open Area. The open area shall be not less than 50% of the *lot* area and shall consist of front, side and rear yards of at least the minimum dimensions herein designated. [Greatly detailed specifications follow.] (Emphasis supplied.)

We have provided emphasis to the word *lot* in order to demonstrate that the yard and open space requirements in question are imposed with respect to *lots* and not to *buildings* and have as their purpose the prevention of overcrowding by overbuilding *lots* or by placing buildings on *lots* too close to buildings on other lots. Section 14-102(32) of the Zoning Code defines a lot as "a parcel of land designated by its owner or developer to be used, developed or built upon as a unit." The Institute's lot is its entire premises consisting of the five acres, more or less, within the city block hereinbefore described. The Institute does not propose to create three lots and erect buildings on each; it seeks only to place three buildings on its existing lot. Since the three buildings have no relationship to any lot other than the Institute's whole property, they are required only to be located on the Institute's lot without causing that lot to be nonconforming to yard and open area requirements. Since the nearest one of the three proposed buildings to an abutting street line is 128 feet distant, and since all except a small part of Science Park remains open, there is no question as to the Institute's lot conformance to the ordinance. We note that L&I's interpretation of the ordinance as requiring each building constructed on a lot to have its own side and rear yards and open spaces would produce the absurdity that the Institute could enlarge its present buildings only by constructing detached structures with imaginary lot lines, but actual yards. In short, the Institute's proposal insofar as the location of the buildings on its lot is concerned, conforms to zoning requirements and no variances were needed.[1] Therefore, the result reached be-

---

[1] This is not to say that municipalities are without power reasonably to regulate the relative placement of structures on single lots; we hold only that the provisions of the Philadelphia Zoning Code referred to by L&I do not do so.

low, although by the allowance of variances, was correct.

Returning again to L&I's response to the Institute's application, we note that it embodies what it calls "2 use refusals." However, only the proposed snack bar is mentioned as a use not permitted in the R-14 Residential District. Section 14-215 of the Zoning Code permits the same uses in the R-14 Residential District permitted in the R-2 Residential District. Section 14-203, applicable to the R-2 Residential District lists as a permitted use:

> Art galleries, museums and/or libraries; provided, that any sales shall be accessory and incidental thereto, and limited to catalogues, books, prints, postcards, and kindred items; . . . .

Since one of the three buildings is an exhibit it is clearly permitted; and a toilet facility is obviously a necessary use incidental to a public museum without specific mention. The quoted language does not, however, seem to us to permit the sale of food as the use of one of the buildings as a snack bar proposes. The Institute therefore needed a variance for this use and, as we have said, there is nothing on this record tending to show that the Institute would suffer unnecessary hardship, as that phrase is defined in the cases, if it could not have a snack bar in Science Park.[2]

In summary, L&I erred in refusing to issue permits to construct the three buildings on the Institute's

---

[2] The appellants refer to a provision of the Philadelphia Zoning Code that nonresidential uses in the R-14 Residential District "shall be conducted in completely enclosed detached buildings" as prohibiting the proposed exhibit building consisting of row houses. The contention is without merit. The regulation clearly does not refer to a museum exhibition building whose exterior might have artistic, or in this case, instructive merit. The appellants' interpretation, if accepted, would suggest that museums have unremarkable, if not dowdy, facades, surely something not intended by city council.

grounds for the asserted deficiency of lack of individual lot lines, rear yard, side yard and open area; it additionally erred in refusing the Institute permission to establish an exhibit or a toilet facility in Science Park, if it did either; but it correctly refused permission to use one of the proposed buildings as a snack bar. The Board of Adjustment erred in granting a variance for the use of one of the proposed buildings as a snack bar and the court below erred in affirming the Board of Adjustment on this point.

Since the matter has been muddled early and late, we will not simply reverse the order below with respect to the snack bar but we will remand the record with direction that the Zoning Hearing Board conduct a further hearing at which the Institute may produce evidence in support of its application for a variance to use one of three proposed buildings as a snack bar.

We affirm the order of the court below dismissing the instant appellants' appeal from the Board of Adjustment's decision with respect to all aspects of the case except the Board's grant of a variance for the use of a proposed 300 square feet one-story building as a snack bar; and with respect to that matter, that is, the snack bar, we reverse the order below and remand the record for further proceedings before the Zoning Board of Adjustment consistent with this opinion.

### Order

And Now, this 31st day of October, 1978, the order below dismissing the appeals from the Board of Adjustment's decision is affirmed, except as it relates to the grant of a variance for a proposed 300 square feet snack bar; and with respect to the matter of the snack bar, we reverse the order below and remand the record for further proceedings before the Zoning Hearing Board consistent with the opinion herein.